[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue presented by the defendant's motion to dismiss this declaratory judgment action is whether that the court lacks personal jurisdiction over the defendant foreign corporation. The court finds that while the defendant has constitutionally sufficient minimum contacts with Connecticut, the assertion of personal jurisdiction over the defendant would not comport with constitutional principals of due process. The defendant's motion to dismiss is granted.
The complaint alleges that the plaintiff, The Bilco Company (Bilco), d/b/a The PermEntry Company (PermEntry), is a Connecticut corporation that has its principal place of business in New Haven, Connecticut. PermEntry is a division of Bilco, and its principal place of business is West Haven, Connecticut. The defendant Carey Precast Concrete Company (Carey Precast) is an Ohio corporation with its principal place of business in Carey, Ohio.
On October 22, 1997, the plaintiff commenced this action seeking a declaration of its rights concerning a license agreement between it and the defendant. The agreement was "dated and effective June 1, 1986," and provided that the plaintiff would license to the defendant the "non-exclusive" right to use all the plaintiff's knowledge pertaining to the sale, manufacture and installation of PermEntry basement entrances. In return for the right to use the plaintiff's knowledge, the defendant paid the plaintiff royalties.
In accordance with the license agreement, the defendant is responsible for the installation of PermEntry basement entrances in Ohio. Also, in the license agreement, the plaintiff agreed not to establish any other licensees in any locations within twenty miles of the defendant's licensed location, so long as the defendant did not sell products in competition with the plaintiff. In April, 1990, the parties signed an addendum to the original agreement in which the plaintiff agreed to grant a territorial extension to the defendant. Specifically, the plaintiff agreed not to establish another licensee with a licensed location in thirty three additional designated counties in the state of Ohio. This territorial expansion, however, was CT Page 7740 conditioned on the defendant's ability to adequately service the expanded area.
The addendum also provided that the determination of whether the area was being adequately serviced was in the sole discretion of the plaintiff, and the plaintiff reserved the right to reduce the territorial portion back to the original twenty mile radius if that requirement was not met. The addendum, however, did provide that the defendant would be given an opportunity to develop and implement a plan to service the additional market in the expanded area, in a manner satisfactory to the plaintiff, before the reversion would be executed.
In April, 1997, the plaintiff notified the defendant that certain additional markets within the area covered by the addendum were not being serviced adequately. The plaintiff further informed the defendant that it had until June 30, 1997 to develop a plan in order to address the situation. On May 5, 1997, the defendant submitted its plan to develop the territory. The plaintiff, however, found this plan unsatisfactory. On May 22, 1997, the plaintiff informed the defendant that it intended to revert the defendant's exclusive territory back to the twenty mile radius as agreed upon in the original license agreement.
By letters dated June 9, and July 31, 1997, the defendant notified the plaintiff that it intended to continue to operate under the terms of the expanded agreement. The defendant further stated that it would commence legal action against the plaintiff if the plaintiff established another licensee in the expanded area. The plaintiff then brought this action.
The defendant has a filed a motion to dismiss this action alleging that this court does not have personal jurisdiction. "A motion to dismiss . . . `properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court, Baskins Appeal from Probate, 194 Conn. 635,640, 484 A.2d 934 (1984).'" (Emphasis in original.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). The motion to dismiss admits all facts that are well-pleaded, invokes the existing record and must be decided upon the face of the record alone. Barde v. Board of Trustees, 207 Conn. 59, 62,593 A.2d 1000 (1988).
"When a motion to dismiss for lack of personal jurisdiction CT Page 7741 raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present the evidence which will establish jurisdiction." Standard TallowCorp. v. Jowdy, 190 Conn. 48, 53-54, 495 A.2d 503 (1983). "[A] motion to dismiss challenging the court's jurisdiction, [requires] a two part inquiry. . . . The trial court must first `decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process.' Frazer v. McGowan, 198 Conn. 243, 246, 502 A.2d 905
(1986). . . ." Knipple v. Viking Communications, Ltd.,236 Conn. 602, 605-06, 674 A.2d 426 (1996).
 I
The defendant is a foreign corporation, and therefore the applicable long-arm statute is General Statutes §33-1219.[1] Section 33-1219 (e)(1) states in pertinent part: "Every foreign corporation shall be subject to suit in this state, by a . . . person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state . . . on any cause of action arising as follows: (1) Out of any contract made in this state orto be performed in this state. . . ."
The defendant argues in support of its motion to dismiss that the relevant contract in dispute is the addendum to the license agreement, not the original license agreement itself. Thus, the defendant argues, the addendum to the original license agreement became effective when it was signed by Kathryn Beck, the president of Carey Precast, in Ohio. The defendant concludes that statutory jurisdiction is lacking because the applicable contract was not made in Connecticut.
The plaintiff counters that the original lease agreement between the parties, which forms the underlying basis for the declaratory judgment action, is the applicable agreement for purposes of personal jurisdiction, and that it became effective in Connecticut. Therefore, argues the plaintiff, under §33-1219 (e)(1), this court may properly assert jurisdiction over the defendant.
It is well established that a contract is considered made CT Page 7742 when and where the last thing is done which is necessary to create an effective agreement. Alfred M. Best Co., Inc. v.Goldstein, 124 Conn. 597, 602, 1 A.2d 140 (1938), and cases cited therein.
In June of 1986, Beck signed the original license agreement in Ohio. The agreement was then forwarded to Edward Lyons in Connecticut for final approval.[2] After reviewing the license agreement, Lyons signed the license agreement in Connecticut. Lyons' act of signing the license agreement was the last act required for the agreement to become effective.
Alternatively, the addendum to the original license agreement was signed by Beck in Ohio on April 17, 1990, after it had been signed by David Pyman, the sales and marketing manager of PermEntry, on April 12, 1990, in Connecticut. Therefore, the addendum became effective on April 17, 1990, in Ohio.
However, the court need not determine whether the appropriate agreement for purposes of statutory jurisdiction is the original license agreement or the addendum. The court finds that the plaintiff performed its obligations under both the addendum and the original license agreement in the state of Connecticut. Therefore, the statutory requirement for personal jurisdiction in Connecticut is met.
General Statutes § 33-1219 (e)(1), provides for the assertion of jurisdiction over a foreign corporation who is a party to a contract that is to be performed in this state. "For a court to assert jurisdiction over a foreign corporation pursuant to [§ 33-1219 (e)(1)], it is clear that the underlying contract must contemplate or encompass some contact with Connecticut. However, that contact need not always be by the defendant: The language of § 33-411 (c)(1) [now §33-1219 (e)(1)] does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought. . . . There is no indication . . . that the Connecticut legislature intended that the language `to be performed in this state' should be given a limited construction to require performance in this state by the party over whom jurisdiction is sought. It would not be appropriate, therefore, for this [c]ourt to impose such a limitation on the statute. Bowman v. GrolscheBierbrouwerij B. V., 474 F. Sup. 725, 731-32, (D. Conn. 1979)."Combustion Engineering, Inc. v. NEI International Combustion,Ltd., 798 F. Sup. 100, 104 (D. Conn. 1992); see also TheCT Page 7743Travelers Ins. v. Par Industries, Superior Court, judicial district of New Haven at New Haven, Docket No. 394427, 21 CONN. L. RPTR. 393 (February 5, 1998) (Hartmere, J.).
The plaintiff's evidence demonstrates that under the terms of both the original lease agreement and the addendum, the plaintiff was to substantially perform its contractual obligations in Connecticut. The plaintiff performed the following functions under both the original lease agreement and the addendum in Connecticut: (1) it held dealer meetings; (2) it determined monthly sales quotas for the defendant; (3) it administered leases to the defendant, (4) it advertised for its licensees, including the defendant; (5) it paid out reimbursement claims to the defendant; (6) it sent a monthly newsletter to the defendant; (7) it shipped goods to the defendant; and (8) it engaged in regular business conversations via telephone, fax and regular correspondence with the defendant. As of the filing of the motion to dismiss, the plaintiff has performed all of these functions pursuant to the original license agreement in 1986, and the addendum created in 1990.
Because General Statutes § 33-1219 (e)(1) only requires that one party to an agreement perform its obligations in the state of Connecticut for the court to assert personal jurisdiction over any other party to the agreement, the plaintiff's performance under both agreements sufficiently subjects the defendant to statutory jurisdiction. The first prong of the two part test for personal jurisdiction is satisfied.
 II
"The due process clause of the [f]ourteenth [a]mendment permits a state to exercise personal jurisdiction over a non-resident defendant with whom it has `certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' [Internal quotation marks omitted.] Calder v. Jones,465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (quotingMilliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342,85 L.Ed.2d 278 (1940) and International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945))." Chaikenv. VV Pub. Corp. , 119 F.3d 1018, 1027 (2nd Cir. 1997). "The due process test for personal jurisdiction has two related components: the `minimum contacts' inquiry and the `reasonableness' inquiry. The court must first determine whether CT Page 7744 the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. SeeInternational Shoe, 326 U.S. at 316, 66 S.Ct. at 158." (emphasis added.) Metropolitan Life Ins. Co. v. Robertson-Ceco Corp. ,84 F.3d 560, 567 (2d Cir. 1996); see also United Elec. Workers v.163 Pleasant Street Corp. , 987 F.2d 39, 46 (lst Cir. 1993);Dalton v. R W Marine, Inc., 897 F.2d 1359, 1363 (5th Cir. 1990). Then "[o]nce a court has determined that a defendant has purposefully established minimum contacts within the forum state, [the] contacts may be considered in the light of certain factors to determine whether the assertion of personal jurisdiction would comport with `fair play and substantial justice.' Burger King, [471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528
1985)]. . . ." United Elec. Workers v. 163 Pleasant StreetCorp. , 987 F.2d 39, 46 (1st Cir. 1993).
 A. Minimum Contacts
The defendant argues that even if a statutory basis exists for the assertion of jurisdiction, the assertion of personal jurisdiction would be unconstitutional because the defendant lacks "minimum contacts" with the forum state. The defendant's argument, however, does not directly address the minimum contacts issue but focusses on the fundamental unfairness of asserting personal jurisdiction over this defendant.
The plaintiff argues that as a result of the business relationship created by the license agreement, the defendant has purposely "availed itself of the benefits and protections of Connecticut's laws," and therefore the assertion of personal jurisdiction over the defendant by this court would not run afoul of the fourteenth amendment's due process protections.
"In determining whether minimum contacts exist, the court considers `the relationship among the defendant, the forum, and the litigation.' Keeton v. Hustler Magazine, Inc., 465 U.S. 770,775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quotingShaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579,53 L.Ed.2d 683 (1977))." Chaiken v. VV Pub. Corp. , supra, 119 F.3d 1027. "The requisite `minimum contacts' necessary to subject a defendant to suit are not determined through a mechanical or quantitative evaluation of the defendant's activities in the forum, but rather through a qualitative examination of the [defendant's relationship with the forum and the litigation.]"Combustion Engineering, Inc. v. NEI International Combustion,CT Page 7745Ltd., supra, 798 F. Sup. 104. "A plaintiff need only demonstrate that the defendant could have reasonably have anticipated being haled into court . . . in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from [the contacts]." Thomason v.Chemical Bank, 234 Conn. 281, 296, 661 A.2d 595 (1995). "The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." United States Trust Co. v. Bohart,197 Conn. 34, 42, 495 A.2d 1034 (1985).
The plaintiff has established that the defendant had sufficient minimum contacts with Connecticut for the assertion by this court of personal jurisdiction. The defendant's representatives have traveled to Connecticut for dealer meetings on at least four occasions. See Combustion Engineering, Inc. v.NEI International Combustion, Ltd., supra, 798 F. Sup. 104
(defendant's employees traveled to Connecticut on several occasions); Electric-Cable Assemblies, Inc. v. UNI-Source OfficeFurniture Parts, Inc., Superior Court, judicial district of Connecticut, Docket No. 052609 (July 11, 1997) (defendant traveled to Connecticut twice on business). The original license agreement provides for, and the defendant agreed to, a Connecticut choice-of-law designation; a relevant factor in a minimum contacts analysis. See Burger King Corporation v.Rudzewicz, 471 U.S at 481-82, 105 S.Ct. at 2187. The defendant sent royalty payments and correspondence to Connecticut in connection with the business agreement. See Charlup v. OmnicorpHoldings, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 121184 (defendant sent faxes, made telephone calls, sent paychecks and correspondence to Connecticut). Finally, the defendant received goods from the plaintiff with a "F.O.B. West Haven, Connecticut" designation. See Electric-Cable Assemblies, Inc. v. UNI-Source OfficeFurniture Parts, Inc, supra, Superior Court, Docket No. 052609 (risk of loss provision made it reasonably foreseeable for defendant to defend suit in Connecticut.)
For these reasons, the court finds that the defendant has purposefully availed itself of the protections of the laws of Connecticut, and the constitutional requirement that the defendant have minimum contacts with the forum state is satisfied.
 B. Fairness CT Page 7746
Finally, the defendant argues that it would be fundamentally unfair for the court to assert personal jurisdiction over the defendant. The defendant claims that it would be at a severe disadvantage with respect to the plaintiff if it were required to defend this action in Connecticut.
The plaintiff does not directly address the defendant's argument that the assertion of personal jurisdiction would be fundamentally unfair.[3] It need not do so. The burden of proof with respect to this claim is on the defendant.
"Once the plaintiff has established that minimum contacts exist, the burden of proof shifts to the defendant who then `must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'Combustion Eng'g, Inc., 798 F. Sup. at 106 (citing Burger KingCorporation v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174,2184-2185, 85 L.Ed.2d 528 1985))." Inset Systems, Inc. v.Instruction Set, Inc., 937 F. Sup. 161, 165 (D. Conn. 1996). "Once minimum contacts have been established, the reasonableness of the exercise of jurisdiction must be determined by an evaluation of several factors. . . .' [A. I. Trade Fin., Inc. v.Petra Bank, 989 F.2d 76, 83 (2d Cir. 1993)." Metropolitan LifeIns. Co. v. Robertson-Ceco Corp. , supra, 84 F.3d 573. "Whether it is `reasonable' to exercise jurisdiction in a particular case depends on `(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.' Metropolitan Life,84 F.3d at 568 (citing Asahi Metal Indus. Co. v. Superior Court,480 U.S. 102, 113-14, 107 S.Ct. 1026, 1032-33, 94 L.Ed.2d 92
(1987). . . ." Chaiken v. VV Pub. Corp. , supra, 119 F.3d 1028. "The minimum requirements inherent in the concept of `fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has the requisite minimum contacts with the forum." Inset Systems, Inc. v. Instruction Set,Inc., 937 F. Sup. 161, 165 (D. Conn. 1996); CombustionEngineering, Inc. v. NEI International Combustion, Ltd., supra,798 F. Sup. 104.
The application of the United States Supreme Court's five part test promulgated in Asahi Metal Indus. Co v. Superior Court, CT Page 7747supra, to the facts in this case, demonstrates that the assertion of personal jurisdiction over this defendant would not comport with traditional notions of fair play and substantial justice."International Shoe Co. v. Washington, 326 U.S. 310, 316,66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
First, the burden on the defendant resulting from the assertion of jurisdiction would be great. The defendant is a small Ohio corporation solely owned by a husband and wife; the plaintiff is a large corporation with business activities in and connections to many states in the Northeast. Further, the plaintiff is well-established in Ohio, whereas the defendant has no offices, real estate, employees, telephone listings, post office boxes or permanent connection with Connecticut other than its relationship with the plaintiff. If the action were to proceed in Connecticut, the defendant would be forced to expend a far greater proportion of its resources than will the plaintiff in Ohio. From a purely financial standpoint, the plaintiff as a large corporation is better able to absorb the costs and expenses associated with the litigation, even if it had to litigate the action in Ohio. The burden on the defendant, if it were to defend this action in Connecticut, would be substantial compared to the size of its operation. Moreover, the plaintiff's business operations will not be affected by this suit, wherever it is litigated. The same is not true of the defendant because it is a small business solely located in Ohio. Defense of the suit in Ohio would result in far less disruption of defendant's daily business activities.
Second, the interests of Connecticut in adjudicating the action are not overriding. Connecticut does have an interest in protecting persons residing in its state, whether individual or corporate, who are victims of torts or breaches of contract. Here, however, the plaintiff is in less need of such "protection." Although the plaintiff is headquartered in Connecticut, it has numerous employees throughout the northeastern United States, including Ohio. Moreover, the acts of which the plaintiff complains occurred predominantly, if not entirely, in Ohio. The districts that the defendant is allegedly not maintaining are located in Ohio. Finally, regardless of whether an Ohio or a Connecticut court adjudicates this matter, the original lease agreement provides for the application of Connecticut law to the controversy. Presumably, the plaintiff is protected to some extent by its desired application of the law of Connecticut. CT Page 7748
Third, the plaintiff's interests in obtaining convenient and effective relief are not compromised by adjudicating this action in Ohio. The Ohio Court of Common Pleas will be able to apply Connecticut law to the action, and the plaintiff can receive the same declaratory relief in Ohio as it would in Connecticut. Ohio's Declaratory Judgment Act is contained its R.C. [Revised Code] Chapter 2721. The Ohio General Assembly has mandated that the Act be afforded a liberal construction: "Sections 2721.01 to 2721.15, inclusive, of the Revised Code are remedial, and shall be liberally construed and administered." R.C. § 2721.13; seeOhio Farmers Indemnity Co. v. Chames, 170 Ohio St. 209, 213, 10 O.2d 164, 166, 163 N.E.2d 367 (1959). Notably, neither party has identified any questions of overarching public policy that may arise in this litigation, whereby an Ohio court would refuse to apply a Connecticut law. Compare Catalano v. Catalano,148 Conn. 288, 170 A.2d 726 (1961); Ciampittiello v. Campitello,134 Conn. 51, 54 A.2d 669 (1947); Levy v. Daniels' U-Drive AutoRenting Co., Inc., 108 Conn. 333, 143 A. 163 (1928); Maisch v.Maisch, 87 Conn. 377, 380-81, 87 A. 729 (1913).
Fourth, the interstate judicial system's interest in obtaining the most efficient administration of justice is subserved by this action being tried in Ohio. "In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located. Caruth v. InternationalPsychoanalytical Ass'n, [59 F.3d 126, 129 (9th Cir. 1995);Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1552 (11th Cir.), cert. denied, 508 U.S. 907, 113 S.Ct. 2334,124 L.Ed.2d 246
(1993)]." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp. ,supra, 84 F.3d 574. This declaratory judgment action concerns an addendum to the original license agreement concerning the maintenance of thirty three districts in Ohio. Thus, the res of the dispute lies solely in Ohio. There is no dispute concerning the original license agreement itself. Furthermore, because the plaintiff received written complaints from customers in Ohio concerning the maintenance of the districts, any witnesses called to testify concerning this central issue live in Ohio. The evidence demonstrates that virtually all of the critical factors necessary for the adjudication of this action are connected to Ohio.
Fifth, the states' shared interest in furthering substantive social policies is not affected by the trial of this action in Ohio. "This factor requires [the court] to consider the interests CT Page 7749 of the several states in promoting substantive social policies."Metropolitan Life Ins. Co. v. Robertson-Ceco Corp. , supra, 84 F.3d 575. The substantive social policy at issue here concerns the fulfillment of the parties expectations with respect to the lease agreement and the addendum. Both states have an equal interest in ensuring that its domiciliaries are protected in this contract dispute. Thus, this factor weighs in favor of neither party.
Therefore, consistent with the United States Supreme Court's "admonition that courts should be `unwilling to find serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum [s]tate'"; MetropolitanLife Ins. Co. v. Robertson-Ceco Corp. , supra, 84 F.3d 575 (citingBurger King, 471 U.S. at 477); this court concludes that asserting personal jurisdiction over the defendant would not comport with "traditional notions of fair play and substantial justice." For this reason, the defendant's motion to dismiss is granted.
LEVIN, J.